UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brian Laabs,  Civ. No. 20-1399 (PAM/ECW)

        Plaintiff,

v.  **MEMORANDUM AND ORDER**

Nor-Son, Inc.,

        Defendant.

---

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings or alternatively for Summary Judgment. For the following reasons, the Motion is denied.

**BACKGROUND**

Plaintiff Brian Laabs brought this case following the termination of his employment with Defendant Nor-Son, Inc., alleging violations under the Family and Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), and Employee Retirement Income Security Act ("ERISA"), as well as the Minnesota Human Rights Act ("MHRA").

Laabs has worked as a construction site lead in commercial and residential construction for over a decade. (Compl. (Docket No. 1) ¶ 6.) In April or May 2018, Nor-Son's Director of Construction, John Jacob, called Laabs concerning working for Nor-Son. (Id. ¶ 8.) During that phone call, Laabs disclosed that he suffered from knee pain and that he anticipated knee-replacement surgeries within the next year or two. (Id.) Jacob hired Laabs over the phone, and Laabs began working for Nor-Son as a site supervisor in Nor-Son's commercial division starting May 2018. (Id. ¶ 9.) That winter, because Nor-Son

had fewer projects, Laabs worked as a laborer without a reduction in compensation or benefits. (Id. ¶ 11.) In Spring 2019, when Nor-Son's business increased, Laabs resumed his duties and responsibilities as a site supervisor. (Id.)

In late September 2019, Laabs spoke to Jacob about needing time off for a medical appointment with a knee surgeon on October 28, 2019. (Id. ¶ 12.) Laabs explained that he was considering having knee surgery that winter and, knowing he would need recovery time, asked Jacob when it would be best to have surgery. (Id.) Jacob responded that having surgery between Christmas and March would be preferable. (Id.)

On October 21, 2019, Laabs called Jacob to discuss his upcoming medical appointment and knee surgery. (Id. ¶ 13.) They discussed someone filling in for Laabs at a Taco Bell construction site grand opening scheduled during Laabs's medical appointment. (Id.) Laabs also asked for information regarding medical leave and disability. (Id.) Jacob directed Laabs to Nor-Son's benefit administrator, Bonnie Gardiepy. (Id.) The next day, Laabs spoke with Gardiepy about short- and long-term disability and FMLA coverage. (Id. ¶ 14.) Gardiepy told Laabs that the FMLA ensured Laabs would keep his job, as long as he returned to work within twelve weeks. (Id.) On October 25, 2019, Jacob called Laabs to confirm coverage for Laabs at the grand-opening event and instructed Laabs to office out of the Taco Bell construction site the following week. (Id. ¶ 16.)

On October 28, 2019, while Laabs met with the knee surgeon, he received two missed calls from Jacob. (Id. ¶ 17.) After the appointment, Laabs spoke to Jacob, who terminated Laabs's employment effective the previous working day, October 25, 2019.

2

(Id.)  Jacob later emailed Laabs stating that he was being laid off immediately because "opportunities [Nor-Son] w[as] trying to contract to secure [Laabs's] time have pushed until spring."  (Id.)

When Laabs was laid off, Gardiepy informed him that his medical insurance through Nor-Son would last through November, after which he could elect to receive COBRA benefits.  (Id. ¶ 19.)  Accordingly, Laabs moved up his knee surgery to November.  Shortly thereafter, while filling a prescription, learned that he no longer had medical insurance.  (Id.)  In a subsequent phone call, Gardiepy told Laabs that his insurance coverage expired on October 31, 2019, and he needed to backdate his COBRA coverage.  (Id.)

Laabs asserts Nor-Son had four or five other site supervisors with less tenure than him, and that one of those had documented performance issues.  (Id. ¶ 18.)  Laabs, however, was the only site supervisor Nor-Son laid off.  In addition, Laabs alleges that Nor-Son received two other jobs around the time he was terminated.  (Id.)  Also during this time, Nor-Son advertised an open position for a residential site supervisor.  (Id.)  Despite knowing that Laabs had residential experience, Jacobs did not offer the position to Laabs, nor did Nor-Son offer to retain Laabs as a laborer over the winter as it had done the previous year.  (Id.)  Finally, Laabs contends that Nor-Son did not follow its own procedure for lay-offs as set forth in the employee handbook.  (Id.)

Nor-Son moves for judgment on the pleadings under Rules 12(d) and alternatively summary judgment under Rule 12(c).

3

**DISCUSSION**

At this early stage of litigation, summary judgment is premature. Accordingly, the Court will regard this as a Motion for judgment on the pleadings and confine its review to the pleadings. A motion for judgment on the pleadings under Rule 12(c), like a motion to dismiss under Rule 12(b)(6), requires the moving party to "clearly establish[ ] that there are no material issues of fact and that it is entitled to judgment as a matter of law." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). The Court must "view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party." Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008). When evaluating a motion for judgment on the pleadings "the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Porous Media, 186 F.3d at 1079 (quotations and citations omitted). Nor-Son fails to establish that there is no genuine dispute as to a material fact, thus judgment on the pleadings is inappropriate.

**A.     FLMA**

The FMLA provides job security to employees who must miss work because of their own illnesses, to care for family members, or to care for infants. 29 U.S.C. § 2612(a)(1)(A)-(D). Two types of claims exist under the FMLA: (1) interference or entitlement claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) retaliation or discrimination claims in which the employee alleges that the employer discriminated against him for exercising his

FMLA rights.  Id. § 2615(a)(1)-(2).  Laabs alleges both.  (Compl. ¶ 24.)

Nor-Son argues that Laabs cannot establish that he was an eligible employee under the FMLA because he has not pled that Nor-Son's Wayzata office, where Laabs worked, employed more than 50 people.  Under the FMLA, an "eligible employee" is "employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite."  29 C.F.R. § 825.110(a).  Laabs pleads that he "was an 'eligible employee' and Nor-Son was his 'employer' within the meaning of 29 U.S.C. § 2611." (Compl. ¶ 25.)  Nor-Son asserts that this is a legal conclusion that fails to meet the pleading standard, and that Laabs was required to explicitly plead that Nor-Son employed at least 50 people at the Wayzata location.  Yet, Laabs's allegation that he was an eligible employee and that Nor-Son was his employer within the meaning of 29 U.S.C. § 2611 necessarily includes the assertion that Nor-Son employed more than 50 employees.

Moreover, an employer's assertion that an employee was ineligible for FMLA leave is an affirmative defense that can be equitably estopped.  Quinn v. St. Louis Cty., No. 09cv1372, 2010 WL 3733970, at *4 (D. Minn. Sept. 20, 2010) (Montgomery, J.) (citing Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 495 (8th Cir. 2002)).  Discovery may show that Nor-Son is equitably estopped from asserting this defense, having told Laabs that he could take FMLA leave.  A plaintiff need not preemptively plead facts showing that he qualifies as an FMLA-eligible employee in anticipation of an employer's affirmative defense to that end.  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 601 n.10 (8th Cir. 2009).

Nor-Son's second argument, that Laabs would have been laid off regardless of his FMLA request, is likewise premature. Nor-Son's argument is supported by self-selected evidence unavailable to Laabs. The parties have been unable to test Nor-Son's assertions and Laabs's allegations to the contrary. Therefore, Nor-Son's Motion is denied as the FMLA claim.

**B.    ADA and MHRA**

Laabs brings discriminatory-discharge claims under both the ADA and the MHRA. "To establish discrimination under the ADA, an employee must show that []he (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of h[is] disability." Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013). Because ADA and MHRA claims have similar elements, [1] they are often analyzed together. See Dovenmuehler v. St. Cloud Hospital, 509 F.3d 435, 439 n.4 (8th Cir. 2007).

Nor-Son argues that Laabs fails to adequately plead that he was terminated because of his disability under the McDonnell Douglas burden-shifting standard. But "a prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002). Regardless, on October 21, 2019, Laabs asked Nor-Son, via Jacob, when it would be best to schedule his knee surgeries. On Friday, October 25, Jacob instructed Laabs to office out of the Taco Bell work site the

---

[1] The parties dispute whether an MHRA also requires proof that a plaintiff was replaced by a non-disabled person. This element, however, requires resolution of a factual question and is inappropriate for a motion for judgment on the pleadings.

6

following week. However, on Monday, October 28, Jacob ended Laabs's employment with Nor-Son. The temporal proximity between Laabs's inquiry regarding taking FMLA leave and his termination provides a sufficient causal connection to survive a motion for judgment on the pleadings, and Nor-Son's Motion is denied as to the ADA and FMLA claims.

**C.     ERISA**

Laabs claims that Nor-Son unlawfully interfered with his ERISA benefits by terminating him. ERISA prohibits an employer from discharging or discriminating against employee participants "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Laabs "must prove that [Nor-Son] possessed a 'specific intent to interfere' with h[is] ERISA benefits." Manning v. Am. Republic Ins. Co., 604 F.3d 1030, 1044 (8th Cir. 2010) (quoting Pendleton v. QuikTrip Corp., 567 F.3d 988, 992 (8th Cir. 2009)). A specific intent to interfere means that Laabs's entitlement to ERISA benefits had "a determinative influence" on Nor-Son's decision. Koons v. Aventis Pharms., Inc., 367 F.3d 768, 777 (8th Cir. 2004) (quoting Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 141 (2000)). Nor-Son again relies on its argument that Laabs was terminated pursuant to a bona fide reduction in force.

Viewing the facts in the light most favorable to Laabs, he sought information regarding his ERISA-guaranteed benefits, and was terminated shortly thereafter. Thus, Laabs has sufficiently pled an ERISA-violation claim to survive a Rule 12 motion.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Nor-Son's Motion (Docket No. 11) is **DENIED**.

Dated: October 14, 2020

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge
